UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RAYMOND LEROY HATCHETT, JR.,

       Plaintiff,

v.                                        Case No:  6:11-cv-1810-Orl-18TBS

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## REPORT AND RECOMMENDATION[1]

Plaintiff brings this action pursuant to the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Act.

I have reviewed the record, including the administrative law judge's ("ALJ") decision, a transcript of the proceedings, the exhibits, administrative record, and the pleadings and memoranda submitted by the parties. For the reasons that follow, I respectfully recommend that the Commissioner's final decision in this case be **reversed** and **remanded** for further proceedings consistent with the findings in this report, pursuant to sentence four of 42 U.S.C. § 405(g).

_____

[1] Specific written objections to this report and recommendation may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

## I.  Background

### A.  Procedural History

Plaintiff has a high school education and has completed two years of college.  (Tr. 30).  His past relevant work includes experience as a janitor, security guard, and mail handler.  (Tr. 141, 191).  He served in the United States Navy from July 10, 1975 through July 9, 1981, when he received an honorable discharge.  (Tr. 31, 109).  He filed for DIB benefits on February 23, 2010,[2] alleging disability beginning on March 2, 2008 due to severe depression and anxiety, major depressive disorder, and hearing problems.  (Tr. 139).  His application was denied initially and on reconsideration.  (Tr. 53-55, 59-60).  On June 9, 2011, at Plaintiff's request, a hearing was held before the ALJ who issued a decision on June 23, 2011, finding Plaintiff was not disabled.  (Tr. 12-50).  On September 23, 2011, the Appeals Council denied Plaintiff's timely request for review.  (Tr. 1-6).  He has exhausted his administrative remedies and this case is now ripe for consideration under 42 U.S.C. § 405(g).

### B.  Relevant Medical Records

On March 11, 2008, Plaintiff saw Dr. Heidi Napolitano, for an initial psychological evaluation.  (Tr. 270-273).  He returned for follow-up appointments on March 20, 2008, April 11, 2008, May 20, 2008, June 26, 2008, October 7, 2008, December 29, 2008, April 14, 2009, June 29, 2009, October 27, 2009, February 25, 2010, May 7, 2010, July 8, 2010, and September 1, 2010. (Tr. 274-283, 379-382).

---

[2] The ALJ's decision and the Commissioner's brief both give February 10, 2010 as Plaintiff's disability application date.  (Tr. 12); (Doc. 18 at 1).  However, February 23, 2010 is the date stamped on each page of Plaintiff's application and is the date the Commissioner established as the application completion date. (Tr. 109-112) ("On February 23, 2010, we talked with you and completed your application for SOCIAL SECURITY BENEFITS.").

On September 9, 2008, Dr. Theodore Weber, a non-examining state agency consultant, reviewed the record and noted that Plaintiff suffered from depressive disorder and generalized anxiety disorder. (Tr. 236, 238). Dr. Weber concluded that Plaintiff was moderately limited in his ability to understand and remember detailed instructions; his ability to carry out detailed instructions; his ability to maintain concentration, persistence, or pace; his ability to maintain attention and concentration for extended periods; and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 243, 247-248). Dr. Weber also found Plaintiff was mildly limited in his activities of daily living and his ability to maintain social functioning. (Tr. 243).

On October 23, 2008 and November 3, 2008, Plaintiff saw William W. Austin, Psy.D. at Access Behavioral Care Associates, P.A. where he completed the Minnesota Multiphasic Personality Inventory – 2 ("MMPI-2"). (Tr. 257-260).  Dr. Austin noted that Plaintiff "appeared pale and perhaps not in good health" and "he sat in a rather slumped position on the couch." (Tr. 257). Dr. Austin also noted that Plaintiff's "thought processes were slow;" his "speech was logical and coherent in a slow and barely audible tone;" his "mood [was] clearly depressed with periodic tearing and a fair degree of anxiety;" and his "judgment and insight [were] poor due to the depression." (Tr. 257-258). Dr. Austin found that:

> [Plaintiff] is functioning at a very low level of efficiency. He tends to overreact to even minor stress, and he may show rapid behavioral deterioration. His lifestyle is chaotic and disorganized, and he has a history of poor work and achievement.

> [Plaintiff] is likely to be experiencing symptoms of a thought disorder. He endorsed a number of extreme and bizarre thoughts, suggesting the presence of delusions and/or hallucinations. He apparently believes that he has special mystical powers or a special "mission" in life that others do not understand or accept. The patient is quite alienated; often feeling victimized, misunderstood, and suspicious of the motives of others. He endorses statements that show difficulty controlling his anger. He is at risk of physically or verbally attacking others when angered.
>
> [Plaintiff] has endorsed a number of items reflecting low moral[e] and depressed mood. He seems plagued by anxiety and worry about his future. The profile reflects difficulty managing routine affairs, poor memory, concentration problems, and an inability to make decisions. He views his physical health as failing and reports numerous somatic concerns.

(Tr. 258). Dr. Austin found that Plaintiff "seems to lack basic social skills." (Tr. 259).  He also opined that, generally, individuals with Plaintiff's MMPI-2 profile "have a severe psychological disorder and would probably be diagnosed with an Anxiety and Dysthymic Disorder in a Schizoid Personality." Id.

On June 29, 2009, Dr. Napolitano wrote a letter in which she stated that she had diagnosed Plaintiff with recurrent major depression and generalized anxiety disorder in March of 2008 and he had been following up with her for treatment and medication management.  (Tr. 262).  Dr. Napolitano "recommended that he file for social security disability and his medical retirement due to the chronicity and severity of his illnesses." Id.

On August 12, 2009, the United States Office of Personnel Management ("OPM") granted Plaintiff disability retirement benefits due to his "disabling medical condition" under the Federal Employee Retirement System ("FERS"). (Tr. 131-133).

In January 2010, Lauren B. Lowery, Psy.D. of the Orlando VA Medical Center ("VAMC") reported that Plaintiff had contemplated suicide by overdosing on his medication and by using a gun. (Tr. 336). Plaintiff's medications were adjusted after these incidents. (Tr. 17).

On February 23, 2010, Plaintiff went to a Social Security field office to complete a disability report. (Tr. 134-137). The interviewer observed that Plaintiff experienced some tremors in his hands; that he appeared as a "very tense individual;" and that he sometimes needed questions repeated in order to understand what was being asked. (Tr. 136). Plaintiff was seen at the VAMC for treatment of his depression from May 24, 2010 through October 21, 2010. (Tr. 307-375). On June 9, 2010, psychologist Tracy Smith noted that he had body odor, was depressed, and had a constricted affect. (Tr. 325).

On May 25, 2010, Dr. Pamela D. Green, a non-examining state agency consultant, found from a review of the record that Plaintiff suffered from depressive disorder and generalized anxiety disorder. (Tr. 296, 298). Dr. Green opined that Plaintiff was moderately limited in his ability to maintain social functioning; his ability to maintain concentration, persistence or pace; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or proximity to others without being distracted by them; his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; his ability to perform at a consistent pace without an unreasonable number and length of rest periods; his ability to accept instructions and respond appropriately to criticism from supervisors; his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and his ability to respond appropriately to changes in the work setting. (Tr. 289-290, 303).

Dr. Green also concluded that Plaintiff was mildly limited in his activities of daily living. (Tr. 303).

On November 11, 2010, non-examining state agency consultant Dr. Gloria Hankins reviewed the record and determined that Plaintiff did not have any exertional limitations. (Tr. 384).  On November 16, 2010, Dr. Corine Samwel, another non-examining state agency consultant reviewed the record and noted that Plaintiff suffered from "major depressive disorder, [r]ecurrent, moderate, [i]n partial remission." (Tr. 394). Dr. Samwel believed Plaintiff was moderately limited in his ability to maintain social functioning; his ability to work in coordination with or proximity to others without being distracted by them; his ability to interact appropriately with the general public; his ability to accept instructions and respond appropriately to criticism from supervisors; and his ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 401, 405-406).  Dr. Samwel also opined that Plaintiff was mildly limited in his activities of daily living and the ability to maintain concentration, persistence, or pace. (Tr. 401).

At the hearing before the ALJ, Plaintiff testified that he receives ten percent service connection compensation from the Veterans Administration for his bilateral high frequency hearing loss. (Tr. 31-32, 337). He used to wear hearing aids, but stopped because he is susceptible to a painful ear fungus. (Tr. 33).

## II.  The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Commissioner and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).  Specifically, the ALJ must determine whether the claimant (1) is currently employed; (2) has a severe impairment; (3) has an

impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since March 2, 2008, his alleged onset date. (Tr. 14). At step two, the ALJ found Plaintiff suffered from the following severe impairments: anxiety disorder, schizoid personality disorder, and bilateral hearing loss. (Id.). At step three, the ALJ decided that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Id. at 14-16). The ALJ also determined Plaintiff's residual functional capacity ("RFC"). (Id. at 16-19). At step four, the ALJ found that Plaintiff could not perform any past relevant work. (Id. at 19-20). Finally, at step five, after considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform. (Id. at 20-21). Accordingly, the ALJ held that Plaintiff had not been under a disability within the meaning of the Act from the March 2, 2008 alleged onset date through the June 23, 2011 date of the ALJ's decision. (Id. at 21).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the ALJ's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The

Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance.  It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision.  Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" Id.  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." Foote, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); accord Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

### A.  Disability Determination Rendered by Another Agency

Plaintiff argues that the ALJ failed to give proper consideration to the disability determination rendered by OPM. (Doc. 17 at 7-9).  The Commissioner argues that the findings of another agency are not binding on the Commissioner and that the ALJ "properly noted an award of retirement benefits by the Postal Service and additionally indicated that he found the award to be unpersuasive as it pertained to whether Plaintiff was disabled during the relevant period." (Doc. 18 at 4).

It is well settled that although disability determinations by another agency are not binding on the Commissioner, they are entitled to great weight. Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984) (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1241 (11th Cir. 1983)); Freese v. Astrue, No. 8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *2 (M.D. Fla. April 18, 2008); see also 20 C.F.R. § 404.1504. I am persuaded by the cases cited by Plaintiff—Freese and Bridges v. Astrue.

In Freese, the administrative record contained evidence that the FERS had determined plaintiff to be disabled, but the ALJ failed to address it – substantively – in his decision. 2008 WL 1777722, at *2. The court found that "[a]lthough the FERS definition of disability may be based on different laws and regulations than the Social Security Administration, the ALJ must still give great weight to the other agency's finding if the two definitions are construed in a like manner." Id. In Freese, the ALJ's written decision merely mentioned that "[w]hether [Plaintiff] is receiving temporary disability retirement, while considered is not binding and is based on different laws and regulations," without discussing the proper weight to be afforded such evidence or analyzing the two agencies' definitions of disability. Id. Ultimately, the court concluded that the ALJ's cursory, conclusory statement that "the FERS determination is based on standards different from those under the Act [was] not supported by substantial evidence." Id. at *3.

The Commissioner attempts to distinguish Freese by arguing that "the OPM Retirement Approval does not indicate that it found Plaintiff 'disabled,' but merely stated that his application for disability retirement benefits was 'approved.'" (Tr. 18 at 5). I find this argument unpersuasive. The OPM approved Plaintiff's disability retirement benefits and in the process, expressly acknowledged the existence of Plaintiff's "disabling medical condition." (Tr. 132).

In <u>Bridges</u>, the court determined that "[t]he ALJ is required to give great weight to OPM's [disability retirement] finding, or provide an adequate explanation for failing to do so." <u>Bridges v. Astrue</u>, No. 5:09-cv-498-Oc-JBT, 2011 WL 549715, at *7 (M.D. Fla. Feb. 8, 2011).  In <u>Bridges</u>, the ALJ noted in his RFC analysis that:

> [T]he claimant has been approved for disability retirement through [OPM].  However, the criteria for disability benefits through OPM are not comparable to the criteria as set forth for Social Security disability benefits.  Furthermore, the Administration is not bound by the finding of disability by any other agency or institution.

<u>Id.</u>  In reversing and remanding the case, the Court said the "conclusory statement that the standards of disability 'are not comparable,' without any further discussion, is inadequate to justify the ALJ's failure to accord great weight to OPM's disability finding." <u>Id.</u>

The Commissioner attempts to distinguish <u>Bridges</u> by arguing that the ALJ's treatment of the OPM decision in Plaintiff's case was harmless because, unlike in <u>Bridges</u>, the ALJ didn't find that Plaintiff could perform his past relevant work.  Again, I am not persuaded by the Commissioner's argument.  The ALJ's error in this case is not harmless.  The ALJ's RFC determination is an administrative finding which directs the ALJ's decision on disability.  <u>See</u> SSR 96-5p ("[A]n RFC assessment is the adjudicator's ultimate finding based on a consideration of [medical source] opinion and all the other evidence in the case record about what an individual can do despite his or her impairment(s)").  If the ALJ had properly analyzed OPM's disability determination it may well have altered the RFC analysis and thus, the ALJ's finding at step five and his ultimate disability determination.

At the disability hearing on June 9, 2011, Plaintiff's counsel told the ALJ a letter

from the postal service granting Plaintiff medical-related early retirement would be submitted following the hearing.  (Tr. 29).  The ALJ agreed to keep the record open for a few days to receive the letter.  (Id.).  Plaintiff testified that he was awarded benefits in 2009, as a result of his employment with the postal service.  (Tr. 31-32).  On June 14, 2011, Plaintiff's counsel mailed a copy of the letter in which OPM notified Plaintiff that his application for disability retirement under FERS had been approved, to the ALJ.  (Tr. 131).  In addition to approving Plaintiff's disability retirement benefits, the OPM letter expressly acknowledged the existence of Plaintiff's "disabling medical condition."  (Tr. 132).

The ALJ issued his written decision on June 23, 2011.  (Tr. 12-21).  The only reference to OPM's disability determination is the following sentence:  "The claimant testified that he is receiving early retirement from the post office, but that is not persuasive."  (Tr. 19).  The ALJ offers no further discussion or analysis of OPM's determination, the agency's reference to Plaintiff's "disabling medical condition," the two agencies' definitions of disability, or most importantly, the proper weight to be afforded the OPM determination.   Accordingly, I respectfully recommend that the district court find that the ALJ failed to apply the correct legal standard in this case, reverse the ALJ's decision, and remand to the Commissioner on this ground.

B.  Treating Psychiatrist's Opinion, RFC Assessment, and Plaintiff's Credibility

Plaintiff's remaining arguments focus on the ALJ's alleged error in failing to properly (a) credit his treating psychiatrist's opinion, (b) assess his RFC, and (c) evaluate his credibility.  (Doc. 18 at 7-16).  Because remand is required on the other issue raised by Plaintiff, it is unnecessary to review these additional objections to the ALJ's decision.

Freese v. Astrue, No.8:06-cv-1839-T-EAJ, 2008 WL 1777722, at *3 (M.D. Fla. April 18, 2008) (citing Jackson v. Bowen, 801 F.2d 1291, 1294 n.2 (11th Cir. 1991)).

## V.  Recommendation

Upon consideration of the foregoing, I respectfully recommend that:

1.    The Commissioner's final decision in this case be **REVERSED and REMANDED** for further proceedings consistent with the findings in this report.

2.    The Clerk be directed to enter judgment accordingly and **CLOSE** the file.

3.    Plaintiff be advised that the deadline to file a motion for attorney's fees pursuant to 42 U.S.C. § 406(b) shall be thirty (30) days after Plaintiff receives notice from the Social Security Administration of the amount of past due benefits awarded.

4.    Plaintiff be directed that upon receipt of such notice, he shall promptly email Mr. Rudy and the OGC attorney who prepared the Government's brief to advise that the notice has been received.

**RESPECTFULLY RECOMMENDED** in Orlando, Florida on February 26, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

Presiding United States District Judge
Counsel of Record